Argued September 22, affirmed September 30, 1953

# OWENS, a Minor *v.* HOLMES

261 P. 2d 383

*Gordon G. Carlson* argued the cause for appellant. On the brief were Yates, Murphy & Carlson, of Roseburg.

*Paul E. Geddes,* of Roseburg, argued the cause and filed a brief for respondent.

TOOZE, J.

This is an action for damages for personal injuries suffered as the result of the alleged negligent operation of a motor vehicle, brought by Marthine Owens, a minor, by her guardian ad litem, as plaintiff, against

Walter R. Holmes, as defendant. The case was tried to a jury. Upon conclusion of the trial defendant's motion for a directed verdict in his favor was sustained, and, based upon such directed verdict, judgment was entered for defendant. Plaintiff appeals.

The accident which gave rise to this action occurred a few miles south of Riddle, in Douglas county, Oregon, on a county road which runs in a general northerly and southerly direction, and which is commonly known as "Shoestring road". The travelled portion of the road is approximately 15 feet in width.

Defendant is a rural mail carrier operating out of the Riddle post office, and serves patrons living along the Shoestring road, among whom is L. Bert Owens, father of plaintiff. In the performance of his duties, defendant operated a 1949 Chevrolet half-ton pickup motor vehicle, which was equipped with front and rear bumpers and running boards.

The Owens' house was situated on the easterly side of the road and somewhat above it. A private driveway leads from the road to the Owens' home. A mailbox fastened to a post approximately four feet high stood at the westerly edge of the travelled portion of the road and directly opposite the entrance to the private driveway. Grass, weeds, and berry vines grew along the fence on the westerly side, both north and south of the mailbox.

The accident occurred on August 23, 1951, at about the hour of 9 a.m., daylight saving time. It was a clear day; the roadway was dry. At the time of the mishap plaintiff was three years and three months of age, and was living with her parents. There were three other minor children in the family. Plaintiff's

height was not established by the evidence, but there is nothing in the record to indicate that her height was other than normal. According to the father's testimony, the children met the mailman almost every day.

On the day and at the hour in question, defendant, while headed south, stopped at the Owens' mailbox and deposited mail. As he approached the mailbox and stopped, there were no other persons or vehicles on or near the road in the vicinity of the box. Both the right and left windows on his truck were open. He was close enough to the box to reach it through the right window. Having deposited the mail in the box, the defendant, without sounding his horn, started forward in low gear and had travelled but a few feet when he heard a scream. Whereupon, he immediately set his brakes and stopped. He found plaintiff lying on her back under the right running board about halfway between the right front and rear wheels of the vehicle.

Plaintiff's injuries consisted of a severe laceration, apparently from a blow on the head that severed the scalp from the skull about the level of the ear on the right side and two to three inches below the hairline. This laceration extended to the crown of the head and to the occipital area. There were no other lacerations on her face, nor were there any bruises or other injuries to any other part of her body, except that her lower gum had been pulled away from the teeth.

No one saw the accident, nor did anyone see the. plaintiff at or near the scene of the accident prior to the time defendant found her in the road under his vehicle as above described. There is no direct evidence in the record indicating where plaintiff was struck or

where she came from immediately prior to the injury. About 2 o'clock in the afternoon of the day of the accident, a police officer located a spot of blood on the westerly side of the road approximately 32 feet from the mailbox. This no doubt marked the spot where plaintiff was lying when she was found by defendant.

The evidence indicates that the child lay in the road where she was struck. There is no evidence tending to show that she was dragged through the dirt or gravel, and inasmuch as she was unconscious when she reached the hospital, she probably was rendered unconscious by the blow she received on her head.

■ In considering the question of whether the trial court erred in directing a verdict for defendant, we are, of course, required to view the evidence in the light most favorable to plaintiff. The foregoing statement of the essential facts is taken from plaintiff's brief filed in this court. It is assumed that plaintiff presented the matter in the light most favorable to her.

After reciting the foregoing facts (excepting the part devoted to plaintiff's injuries), plaintiff states in her brief:

"* * * Thus construing the evidence in plaintiff's favor, it appears that she was struck approximately 32 feet from the mailbox."

From this fact, plaintiff contends that a reasonable inference may be drawn that she was in the road in front of defendant's vehicle during the time defendant was travelling the distance of approximately 32 feet, and, therefore, within view, and should have been seen by defendant and would have been seen by him,

had he been keeping a proper lookout. Plaintiff says in her brief:

> ''The facts from which appellant draws the inference of negligence are these: In broad daylight on a clear day defendant, having reason to anticipate the presence of small children, started his truck from a complete stop, moved a distance of twenty-odd feet, and struck a three year old child at a point five feet from the right-hand edge of the road and 32 feet from the place where his eyes had been when he started; and yet defendant did not see the child until after he had struck her. One or more of four children, of whom plaintiff was one, had met defendant at the mailbox almost every day for three years, and yet defendant started his truck without sounding his horn. Plaintiff charges defendant with failure to keep a lookout, and failure to sound his horn.''

■ To recover in this case, it was incumbent upon plaintiff to establish by a preponderance of satisfactory evidence one or more of the specific acts of negligence charged against defendant, and that such negligence proximately caused her injuries. It is not necessary to establish negligence by direct and positive evidence; it may be established by circumstantial evidence. But where proof of negligence depends entirely upon circumstantial evidence, as here, it is necessary that the essential facts in the chain of circumstances be established by a preponderance of satisfactory evidence before a jury is entitled to draw any inference therefrom; the facts so established must be such that from them a reasonable inference of negligence may be drawn, and further, that the negligence so inferred was the proximate cause of the injury. When the evidence shows two or more equally probable causes of injury, for not all of which defendant is responsible, no action for negligence can be maintained.

▰▰ There is no evidence whatever in the record to establish a duty upon the part of defendant to sound the horn on his vehicle before starting forward. · There was no one in sight to be warned, nor had there been at any time immediately prior thereto. It is immaterial that children had been there on previous occasions. Had plaintiff or the other children been at or near the mailbox while defendant was stopped, due care on his part might under such circumstances have required him to sound the horn before putting his vehicle in motion. But such is not the case here. A horn on a motor vehicle is provided as a means of warning. Its use is required only when a warning reasonably appears necessary or is commanded by statute.

▰ To adopt plaintiff's theory that an inference may reasonably be drawn that defendant was negligent in failing to maintain a proper lookout, we must accept her contention that the blood spot found on the road justifies an inference that she was in the highway in front of defendant, and in plain view, as defendant drove forward.

It must be remembered that no person saw plaintiff at any time immediately prior to the accident. When found, she was not lying under the front of the truck; she was lying on the road under the right running board. Had she been in front of the vehicle when struck, she necessarily would have been hit by some portion of that part of the truck. The nature of her injuries indicates otherwise. Had the accident occurred by her being struck by the front bumper or other forward part of the vehicle, it is manifest that there would have been some marks upon other parts of her body, in addition to the laceration on her head.

It is far more reasonable to speculate that while defendant was engaged in depositing the mail in the Owens' mailbox and giving his attention thereto, the plaintiff came down the private driveway, passed to the rear of the truck out of defendant's view, and approached the mailbox on the right side of the truck about the time defendant was ready to proceed forward. She may have seated herself on the running board, or she may have been caught between the car and the mailbox as the car moved forward, or she may have stumbled and fallen into the right side of the vehicle.

No one knows what may occur to the mind of a three-year-old child. Upon some childish impulse and for some childish purpose, she may have hidden in the weeds along the westerly side of the road and as the truck moved forward, stepped into the side of the truck.

These and other speculations might be indulged in, one no more reasonable and probable than the others. Considering the nature of plaintiff's injuries and where she was lying after the accident makes it much more reasonable to assume that she approached the truck from the right side and was struck by some portion of that part of the vehicle. No one knows just what did happen. To arrive at any solution of the problem, one must indulge in pure conjecture and speculation. Liability can never be based upon any such nebulous hypothesis.

The facts in this case are readily distinguishable from the facts appearing in *Maletis v. Portland Traction Company*, 160 Or 30, 83 P2d 141, and in *Lane v. Hatfield et al.*, 173 Or 79, 143 P2d 230, where the causes of action involved injuries to minor children.

The rules of law applicable to the instant case are aptly stated by Mr. Justice BELT in *Simpson v. Hill-*

*man,* 163 Or 357, 97 P2d 527, a case involving injuries to a child. Those rules are now firmly established in this state. It is unnecessary to restate them. Under the law as so announced, the trial court did not err in sustaining the motion for a directed verdict in favor of defendant. See also *Quetschke v. Peterson et al.,* 198 Or 598, 258 P2d 128; *Wintersteen v. Semler,* 197 Or 601, 255 P2d 138, 147.

The judgment is affirmed.