## LIVESTOCK TRANSPORTATION, INC. et al,
*Respondents,*

*v.*

## ASHBAUGH,
*Appellant.*

## (A8005-01711; CA A25114)

666 P2d 1356

Timothy N. Brittle, Portland, argued the cause for appellant. With him on the brief was Acker, Underwood & Smith, Portland.

Vicki Hopman Yates, Portland, argued the cause for respondents. With her on the brief was Landis, Aebi & Bailey, P.C., Portland.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

Buttler, P. J., dissenting.

## JOSEPH, C. J.

This is a negligence case involving a collision between defendant's car and plaintiffs' truck. The jury found defendant 74 percent negligent, and judgment was entered against him for $34,953. He appeals.

Don and Tami Jarvi are joint venturers with Livestock Transportation, Inc., which is in the business of hauling cattle. The corporation leases the truck from the Jarvis, who drive it for the corporation. On the morning of November 19, 1979, the Jarvis loaded the truck's trailer with cattle in Suplee and drove to John Day, where they stopped for about an hour for lunch. Afterward, they were heading west on Route 26, two or three miles outside John Day, when the accident occurred.

Don Jarvi testified that the truck has a 13-speed manual transmission and that, while he was picking up speed and traveling at about 40 to 45 miles per hour in a 55-mile-per-hour zone, defendant's car passed him. He said the car pulled in fairly close in front of the truck, so he put on the engine brake to slow down slightly. He then saw the car's brake lights come on, and he stepped on his brakes but could not avoid hitting the car. The truck tipped over and slid down the road.

Defendant and his wife, who was a passenger in his car, both testified that they did not pass the truck. He said that he was driving under the cruise control at 55 miles per hour and realized that he had missed a turnoff. He said that he had tapped the brake to release the cruise control and was traveling at about 50 miles per hour when the car was struck from behind.

In his first assignment of error, defendant argues that the trial court erred in overruling his objection to the testimony of plaintiffs' first witness, an Oregon State Police officer, regarding a statement he took from Don Jarvi after the accident. The officer, on direct examination and over defendant's hearsay objection, testified:

> "[Don Jarvi] stated that he was west-bound on Highway 26. Had been running between 45 and 50 miles an hour. That he had been passed by a cream-colored or light-colored station wagon. And that as he had been passed, he had to apply his motor brake or his jack brake to slow him down and let the car in. And when — when the car that had passed him was back in

the lane about four car lengths ahead, it had suddenly slowed down right in front of him. And that he braked, pulled — turned his vehicle to the left to try to avoid the vehicle."

Both Jarvis gave essentially the same version of the accident.

■ Plaintiffs argue that the officer's testimony is admissible under OEC 801-(4)(a)(B):

"(4) A statement is not hearsay if:

"(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"* * * * *

"(B) Consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge of recent fabrication or improper influence or motive."

They claim that defendant made an implied charge of recent fabrication against Don Jarvi and that the rule applies even though he testified *after* the officer. Had defendant been able to elicit evidence to suggest that Jarvi had fabricated his version of the accident, the fact that the rehabilitating witness testified before him would not necessarily preclude application of the rule. *See State v. Herrera,* 236 Or 1, 386 P2d 448 (1963).

■ Plaintiffs claim that defense counsel charged Tami Jarvi with contriving her version of the accident and, because her version of the accident at trial was similar to her husband's, that he was indirectly charged with contriving his version of the accident. On direct examination, she testified that a woman in a passenger seat of defendant's car pointed out the window shortly before the accident. Defense counsel introduced a statement she had made 10 days after the accident to representatives of Livestock Transportation that a *man* had pointed out the window. Don Jarvi said nothing in his testimony about anyone pointing out a window. However, in all other respects, both plaintiffs' versions of the essential facts of the accident were similar. Assuming *arguendo* that Don Jarvi could be indirectly impeached by the impeachment of Tami Jarvi, we fail to see how the use of her prior inconsistent statement amounts to an implied charge of recent fabrication against her husband. Other than someone's having pointed out the car window, Tami Jarvi's version of the accident was the

same as her husband's version.[1]

■　Plaintiffs argue that, even if the receipt of the officer's "rehabilitating" testimony was error, it was harmless, because there was other evidence supporting Don Jarvi's version of the accident as told by the officer. Further, they argue, defense counsel had ample opportunity to cross-examine both Don Jarvi and the officer and, in questioning the officer, had asked him to refer to the statement given by Jarvi after the accident without going on to ask him anything about the challenged part of it. Whether defendant's car passed plaintiffs' truck was critical to the question of who was negligent and to what degree. The corroborating evidence of Don Jarvi's version was his wife's testimony. The trial judge commented that, even though there was no direct attack on Don Jarvi's credibility, "there was an aroma in this case" that he had concocted the passing incident "as part of the defense" of his conduct. That "aroma" pervades the transcript, too. We are not "prepared to say that if the challenged evidence had been excluded the result of the trial might have been different." *Pearson v. Galvin,* 253 Or 331, 340, 454 P2d 638 (1969). The error, if any, was harmless.

■■　Defendant argues that the trial court erred in sustaining plaintiffs' hearsay objection to defendant's testimony about a statement made to him by an unidentified man who stopped at the scene of the accident. In his offer of proof, defendant testified:

> "The fellow told me that — I believe he asked me what happened. I told him I was rear-ended. And he told me that this truck almost hit him in John Day as they were pulling out [of] a side street and the truck was passing them."

Defendant argues that this testimony is admissible as an excited utterance. Even assuming that it is an excited utterance, it is not relevant. Other conduct evidence can be admitted only if there is also evidence that the conduct at the time of the accident was a continuation of the conduct observed by the witness. *Cox v. Jacks,* 268 Or 180, 519 P2d 1041 (1974). That plaintiffs' truck may have almost hit a car pulling out of a side

---

[1] In argument on a motion for new trial plaintiffs said that defendant attempted in jury argument to charge Don Jarvi with a recent fabrication on the basis of Tami Jarvi's purported inconsistencies. The arguments are not included in the transcript on appeal.

street some two or three miles from and at an unknown time before the accident has nothing to do with plaintiffs' conduct at the time of the accident. *See Collins v. Vann,* 37 Or App 535, 588 P2d 52 (1978).

Affirmed.

**BUTTLER, P. J.,** dissenting.

The majority recognize that the critical question, both as to who was negligent and to what degree, is whether defendant's car passed plaintiffs' truck, pulled in front of the truck and then slowed down. Notwithstanding the significance of that issue, the majority conclude that it is not necessary to decide whether the trial court erred in permitting plaintiffs to call, as their lead-off witness, the Oregon state police officer, to set the stage by telling the jury what happened consistent with plaintiffs' theory of the case, because, if it erred, the error was harmless. Because I conclude that the evidence was hearsay at the time it was offered, and therefore it was not admissible, it was error and I cannot conclude that the error was harmless.

Under OEC 801-(4)(a)(B), the officer's testimony would not have been hearsay if it had been offered "to rebut an inconsistent statement or an express or implied charge of recent fabrication or improper influence or motive." The reason it ceases to be hearsay when it is so offered is that witness is testifying to a fact: that the declarant said such and such. Here, however, the officer was the lead-off witness and was permitted to testify as if the statements he reported were true. Defendant's hearsay objection should have been sustained. It may be infrequent that taking a witness out of order constitutes reversible error; however, it does in this case: with an aura of official authority, he set the stage for plaintiffs' case, based on what was hearsay at the time it was offered.

Accordingly, I would reverse and remand for a new trial.